UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION, CINCINNATI

| | | |
|---|---|---|
| JOSE MARIA DECASTRO, | : | CASE NO. 1:22-cv-00204 |
| | : | |
| Plaintiff, | : | Judge Michael R. Barrett |
| | : | Magistrate Judge Stephanie K. Bowman |
| v. | : | |
| | : | DEFENDANTS PAM WAGNER, BRAD |
| PAM WAGNER, ET AL., | : | SPOLJARIC, CHANCE BLANKENSHIP, |
| | : | EVAN MCNIGHT, ROBERT FOUCH, |
| Defendants. | : | AND THE CITY OF IRONTON, OHIO'S |
| | : | MOTION FOR JUDGMENT ON THE |
| | | PLEADINGS |

Now come Defendants Pam Wagner, Brad Spoljaric, Chance Blankenship, Evan McNight, Robert Fouch, and the City of Ironton, Ohio ("the Ironton Defendants"), by and through counsel, and hereby move this Honorable Court for an Order granting them judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c). The Ironton Defendants' arguments in support of this request are set forth more fully herein.

Respectfully submitted,

SURDYK, DOWD & TURNER CO., L.P.A.

*/s/ Dawn M. Frick*
Jeffrey C. Turner (0063154)
Dawn M. Frick (0069068)
Nathaniel W. Rose (0099458)
8163 Old Yankee Street, Suite C
Dayton, Ohio 45458
(937) 222-2333, (937) 222-1970 (fax)
jturner@sdtlawyers.com
dfrick@sdtlawyers.com
nrose@sdtlawyers.com
*Trial Attorneys for Pam Wagner, Brad Spoljaric, Chance Blankenship, Evan McNight, Robert Fouch, and the City of Ironton, Ohio*

**MEMORANDUM IN SUPPORT**

I. **INTRODUCTION AND PROCEDURAL HISTORY**

Plaintiff Jose DeCastro ("Plaintiff"), proceeding pro se, filed his original complaint in the instant case on April 13, 2022. The Complaint names the following Defendants: Pam Wagner, Brad Spoljaric, Chance Blankenship, Evan McKnight, Robert Fouch, City of Ironton ("the Ironton Defendants"), as well as Major Chapman, Jane Doe, Lawrence County, Ohio ("the Lawrence County Defendants"). The Ironton Defendants filed their Answer and served Mr. DeCastro at the address listed in the caption on his Complaint on May 11, 2022. (See Exh. A) The Lawrence County Defendants filed a Motion to Dismiss on May 11, 2022, and the Ironton Defendants filed a Motion for Judgment on the Pleadings on June 21, 2022 (Doc. 13) and again, served it on Plaintiff at the address identified in his Complaint. (See Exh. B.) Plaintiff never filed a response to either of these motions, and as such, this Court issued two separate Orders to Show Cause, one on June 29 (regarding the Lawrence County Defendants' Motion to Dismiss, Doc. 16) and on July 21, 2022 (regarding the Ironton Defendants' Motion for Judgment on the Pleadings, Doc. 17). Plaintiff filed a Response to the Court's Order to Show Cause on August 11, 2022. (Doc. 18.) However, before the Ironton Defendants had an opportunity to respond, on August 15, 2022, this Court entered an Order indicating that it construed Plaintiff's response as being responsive to both Orders to Show Cause. (Doc. 19.) The Order further indicated that Plaintiff would be granted a thirty-day extension of time to respond to Defendants' pending dispositive motions, or in the alternative, to file his first amended complaint. Plaintiff filed his First Amended Complaint on September 15, 2022. (Doc. 20). However, the Amended Complaint was apparently manually filed and its exhibits, which included a USB drive, were not served upon the Ironton Defendants.

1

Like Plaintiff's original Complaint, Plaintiff's Amended Complaint names the Ironton Defendants as parties to the suit. However, Plaintiff's Amended Complaint does not name the Lawrence County Defendants, and it appears Plaintiff has eliminated his claims against the Lawrence County Defendants. The facts alleged in Plaintiff's Amended Complaint are nearly identical to the original Complaint. Those facts are set forth below.

Plaintiff is a self-proclaimed "videographer, vlogger, and civil rights activists [sic] who has been video recording publishing his recordings, edited and unedited, on media forums such as, YouTube, Facebook, Instagram, and the like since approximately 2020." (Doc. 20, PageID 134). Plaintiff claims that the financial benefit from his postings serves as an essential economic support for him. (Id.).

Plaintiff alleges that on Tuesday, March 29, 2022, Plaintiff (who is not a resident of Ironton, Ohio) and fourteen other individuals entered Ironton City Hall (i.e., Ironton City Center) at approximately 4:00 p.m. (Id.). Although in his original Complaint, Plaintiff claimed that he and the other individuals were present at the City Center to engage in a "peaceful protest," in his Amended Complaint, he claims that he and the others were there "waiting hours for a permit to use one of the rooms for a constitutional teaching session." (Doc. 1, PageID 7) (Doc. 20, PageID 134). Plaintiff alleges that at approximately 5:00 p.m., a City of Ironton employee informed him that the Ironton City Center was closing and going to be locked. (Doc. 20, PageID 134-135). Despite this, Plaintiff remained on the property. Then, according to Plaintiff, Plaintiff was approached by Ironton Police Chief, Pam Wagner, who ordered Plaintiff to "cease and desist his disorderly conduct." (Id., PageID 135). After failing to comply and leave the building, Plaintiff was arrested by Ironton Police Officers Spoljaric, Blankenship, McKnight, and Fouch. (Id.). Then, according to Plaintiff, he "was taken to the booking area where several criminal charges were

brought against him" and he "was patted down, his person searched, and personal property including his wallet, car key, and other items, including his iPhone 12 Max Pro were taken." (Id.).

Plaintiff then alleges that after posting bond approximately two hours later, he was released, at which time his personal property was returned to him with the exception of his iPhone 12 Max Pro. (Id.). On April 1, 2022, Judge Kevin Waldo issued an Entry in Plaintiff's criminal Case No. 22CRB211A, B, C, that the "officer or officers had probable cause to take the phone." (Exh. C.) Plaintiff claims to have made several demands to the Ironton Police Department for the return of his cell phone, including a formal demand that he claims he delivered to the Ironton Police Department on 4/5/22. (Id., PageID 136). He also filed a Complaint for Replevin in Ironton Municipal Court Case No. CVH2200076 on April 4, 2022, as reflected by Exhibit D attached hereto. Additionally, in an Entry by Judge Kevin J. Waldo in that case (which is attached hereto as Exhibit E), [1] the Court notes that Plaintiff was returned his iPhone 12 Max by Ironton Police Department representative, Pam Wagner. That Entry further notes that after Plaintiff obtained possession of the iPhone, "no evidence was presented as to any damages," and thus, the case was dismissed with prejudice. Although there has never before been any reports of Plaintiff's iPhone being damaged, and Plaintiff did not raise any such concerns during the replevin hearing, Plaintiff now claims in his Amended Complaint that his iPhone was returned "in a damaged state." (Doc. 20, PageID 136). Specifically, Plaintiff notes that "[u]pon immediate inspection" of his iPhone when it was returned, he "observed that the sim card and tray were missing and that the area of insert was damaged." (Id.). Despite claiming that he noticed said damages <u>immediately</u> upon its

---

[1] It is appropriate to consider Exhibits C, D and E, on the Ironton Defendants' Rule 12(c) Motion because it is well-established in the Sixth Circuit that, on a Rule 12(b)(6) or 12(c) motion, "the 'court may take judicial notice of other court proceedings without converting the motion into one for summary judgment.'" *Scott v. Reif*, 659 Fed.Appx. 338, 342 (6th Cir. 2016) (quoting *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2020)).

return, it is quite puzzling that the Replevin Entry notes that after the phone was returned to Plaintiff, "no evidence was presented as to any damages." (Exhibit E). Furthermore, Plaintiff also now claims for the first time that the Ironton Defendants "searched the contents of [Plaintiff's] cell phone." (Doc. 20, PageID 138). However, besides this baseless assertion, Plaintiff alleges no facts to support this.

Like Plaintiff's original Complaint, Plaintiff's Amended Complaint sets forth four causes of action against the Ironton Defendants: Cause 1 – alleged violation of the Fourth Amendment; Cause 2 – alleged violation of the Fourteenth Amendment (Due Process); Cause 3 – alleged violation of the First Amendment; and Cause 4 – *Monell* claim. Although Causes 1-3 are nearly identical to those set forth in Plaintiff's original Complaint, it should be noted that Cause 4, the *Monell* claim, is now based on an alleged custom, policy, or practice as opposed to a failure to train and supervise. As explained herein, with regard to all of the causes of action against the Ironton Defendants, Plaintiff has failed to state a claim upon which relief can be granted.

## II. LAW AND ARGUMENT

### A. Standard of Review

Under the Federal Rules of Civil Procedure, "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). Judgment may be granted under Rule 12(c) where the moving parties clearly establish that no material issue of fact remains to be resolved and that they are entitled to judgment as a matter of law. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard of review as a motion under Rule 12(b)(6). *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005).

4

In addition, it is well settled that, in presenting a complaint, "[t]hreadbare recital of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). Although the court must accept well-pleaded allegations of the complaint as true for purposes of a motion to dismiss, the court is not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). Specifically, "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' provide insufficient grounds for entitlement to relief." *Huffer v. Bogen*, 503 Fed.Appx. 455, 461 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). "What *Twombly* and *Iqbal* do require is that plaintiffs provide factual allegations from which a court may plausibly infer a cause of action." *Gross v. Nationwide Credit, Inc.*, Case No. 1:10-CV-00738, 2011 WL 379167, *3 (S.D. Ohio Feb. 2, 2011).

### B. Plaintiff has failed to state a claim for relief under the Fourth Amendment.

The Fourth Amendment guarantees "that government officials may not subject citizens to searches or seizures without proper authorization," and therefore, "[a] person who has been the victim of an unlawful arrest or wrongful seizure under the color of law has a claim based on [this Amendment." *Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir. 2009). "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S.Ct. 588 (2004). "[T]he validity of the arrest does not depend on whether the suspect actually committed the crime. . . ." *Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S.Ct. 2627 (1979). As a result, "in order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002).

"Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Logsdon v. Hains*, 492 F.3d 334, 341 (6th

5

Cir. 2007) (quoting *Henry v. United States*, 361 U.S. 98, 102, 80 S.Ct. 168 (1959)). The probable cause inquiry "'depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest,' where supported by 'reasonably trustworthy information'" *Id.* (citation omitted). An officer who intends to execute a warrantless arrest is not tasked with an overly-burdensome duty to investigate." *Id.* In initially determining probable cause, an officer need not "investigate independently every claim of innocence." *Id.* (citing *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000)). "And after the officer determines, on the basis of the facts and circumstances known to him, that probable cause exists, the officer has no further duty to investigate or to search for exculpatory evidence." *Id.*

"Authorization for an arrest typically depends on state law." *Skovgard v. Pedro*, 448 Fed.Appx. 538, 544 (6th Cir. 2011) (citing *Logsdon*, 492 F.3d at 341). Here, Plaintiff was initially arrested for criminal trespass. The criminal trespass statute in Ohio provides as follows:

(A) No person, without privilege to do so, shall do any of the following:

(1) Knowingly enter or remain on the land or premises of another;

(2) Knowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes, or hours, when the offender knows the offender is in violation of any such restriction or is reckless in that regard;

(3) Recklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender, or in a manner prescribed by law, or by posting in a manner reasonably calculated to come to the attention of potential intruders, or by fencing or other enclosure manifestly designed to restrict access;

(4) Being on the land or premises of another, negligently fail or refuse to leave upon being notified by signage posted in a conspicuous place or otherwise being notified to do so by the owner or occupant, or the agent or servant of either;

(5) Knowingly enter or remain on a critical infrastructure facility.

6

O.R.C. § 2911.21(A)(1)-(5). Further, Section 2911.21(B) provides that "[i]t is no defense to a charge under this section that the land or premises involved was owned, controlled, or in custody of a public agency." Finally, the Ohio Revised Code defines "privilege" as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." *Id.* § 2901.01(A)(12). "'Ohio courts construe the lack-of-privilege requirement as an element of the offense of criminal trespass, and not an affirmative defense.'" *Skovgard*, 448 Fed.Appx. at 544 (quoting *Logsdon*, 492 F.3d at 342).

Here, the Ironton Defendants had probable cause to arrest Plaintiff. The Ironton Defendants arrested Plaintiff after the office was closed for the day. Furthermore, it is undisputed that Plaintiff knew that the Office was closed at the time of his arrest. For instance, in his Complaint, Plaintiff acknowledges that "[a]t approximately 5 p.m. a City of Ironton employee announced that the building was going to be closed and locked." (Doc. 20, PageID 134-135). He further acknowledges that Chief Wagner first approached him in the City Center at 5:03 p.m., and that Wagner warned him to leave prior to arresting him. (Id., PageID 135). Thus, by Plaintiff's own admission, he remained on the property after closing and refused to leave when told to do so. Therefore, the Ironton Defendants had probable cause to place Plaintiff under arrest.

Also, Plaintiff cannot demonstrate that he had any privilege to remain at the Ironton City Center after closing. In his Complaint, Plaintiff alleges as follows: the Ironton Defendants "failed to comply with the state of Ohio peaceful protest statutes, policies, and procedures when they encountered plaintiff on 3/29/22. Instead of directing and escorting plaintiff out of the building per the statutes, these defendants chose to make an arrest." (Id., PageID 138). However, Plaintiff has not identified any statute that would permit his conduct because no such statute exists. Thus, without any privilege to remain on the property, this further affirms that the Ironton Defendants

7

had probable cause to arrest Plaintiff. Accordingly, Plaintiff has failed to state a viable Fourth Amendment claim under § 1983.

### C. Plaintiff has failed to state a claim for relief under the Fourteenth Amendment.

The Fourteenth Amendment provides, in part, that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause contains both a procedural and a substantive component. To present a procedural due process claim under 42 U.S.C. § 1983, the plaintiff must "show that the defendant acted under the color of state law to deprive the plaintiff of a definite liberty or property interest." *Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 539 (6th Cir. 2002). However, "[i]n order to assert such a claim, [a plaintiff] must first 'plead . . . that state remedies for redressing the wrong are inadequate'" *Buchanan v. Reeve*, 2005 WL 1652188, *9 (S.D. Ohio Apr. 8, 2005) (quoting *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir.1983), cert denied, 469 U.S. 834, 105 S.Ct. 125, 83 L.Ed.2d 67 (1984)). Additionally, when a plaintiff fails to allege any facts indicating that his remedies under Ohio law to redress the wrong complained of are inadequate, he has failed to state a due process claim that is actionable in a § 1983 proceeding. *Id.*

Here, Plaintiff's due process claim pertains to his allegation that the Ironton Defendants have withheld his iPhone from him. Nevertheless, Plaintiff has failed to allege any facts indicating that his remedies under Ohio law are inadequate to redress this alleged wrong. The Sixth Circuit has specifically held that state remedies, such as replevin proceeding under state law, is an adequate remedy for individuals seeking property that has been seized by police. *International Metal Trading Inc. v. City of Romulus, Mich.*, 438 Fed.Appx. 460, 463 (6th Cir. 2011). Plaintiff, did in fact, file a replevin action against Ironton Police Department in Ironton Municipal Court Case No. CVH2200076. Exhibit D, which attached hereto. Furthermore, Exhibit E, which is

attached hereto, is an Entry by Judge Kevin J. Waldo in Plaintiff's replevin action. That Entry states, in relevant part:

> The Court observed the Defendant, Ironton Police Department representative, Pam Wagner, return to the Plaintiff, Jose DeCastro, the IPhone 12 Max, subject of the Replevin action, herein.
>
> Therefore, the Plaintiff has obtained possession of the subject property and no evidence was presented as to any damages, thus, the case herein, is **DISMISSED** with prejudice.

Thus, Plaintiff not only filed a Replevin action, but said action proved to be adequate, as Plaintiff has re-gained possession of his iPhone 12 Max.[2]

Accordingly, because Plaintiff has failed to allege any facts indicating that his remedies under Ohio law to redress the wrong complained of are inadequate, he has failed to state a due process claim that is actionable in a § 1983 proceeding.

### D. ,Plaintiff has failed to state a claim for relief under the First Amendment.

Plaintiff's First Amendment claim is based on his allegation that the Ironton Defendants have "kept [Plaintiff's] main recording device from him" "[i]n order to impede, stop, otherwise deter [Plaintiff] from filming public officials, conducting and recording interviews, and other investigatory filming." (Doc. 20, PageID 139). While courts have held that there is a First Amendment right to film police officers, those cases have dealt with situations where a Plaintiff was prevented from recording while engaged in lawful activities or pursuant to some statute or regulation. *See Crawford v. Geiger*, 996 F.Supp.2d 603, 614-15 (N.D. Ohio 2014) (collecting cases).

---

[2] As previously explained herein, it is appropriate for the Court to consider Exhibits A and B on a Rule 12(C) Motion without converting the Motion into one for Summary Judgment. *See supra* page 3, note 1. Nevertheless, even without considering Exhibits D and E, the result would still be the same. It is not determinative that Plaintiff did in fact file a Replevin action; rather, what is determinative is the fact that such an action is available to him, and that such an action is an adequate state law remedy. *See, e.g., International Metal Trading Inc. v. City of Romulus, Mich.*, 438 Fed.Appx. 460, 463 (6th Cir. 2011).

9

Here, Plaintiff was not able to engage in recording activities because his cell phone was seized pursuant to a lawful arrest that had nothing to do with his recording activities. Thus, although Plaintiff's third cause of action is couched as a "1st Amendment" claim, it is actually indistinguishable from his due process claim pertaining to the seizure of his cell phone. And, as previously explained, Plaintiff has failed to state a due process claim that is actionable under § 1983 because he has failed to allege any facts indicating that his remedies under Ohio law to redress the wrong complained of (i.e., regain possession of his cell phone) are inadequate.

### E. Plaintiff has failed to state a claim for relief under *Monell* against the City of Ironton.

Plaintiff's *Monell* claim is based on his allegation that the City of Ironton "promulgated the custom practice or policies which enables officers like the defendants to target proponents of First Amendment protected activities, i.e. recording public officials in the City of Ironton and arrest them, unlawfully search, seize and permanently damage recording devices to deter said protected activities." (Doc. 20, PageID 140). However, "[t]here can be no liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (citing *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 879 (6th Cir. 2000)). As explained herein, Plaintiff has failed to state a constitutional violation under all of his theories of liability. As such, without being able to show an underlying constitutional violation, Plaintiff's *Monell* claim is also without merit. *Id.* Nevertheless, even if Plaintiff were able to show an underlying constitutional violation, Plaintiff has failed to adequately state a *Monell* claim against the City of Ironton.

"'A plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom.'" *Bickerstaff v. Lucarelli*, 830 F.3d 388, 401-02 (6th Cir. 2016) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)). "This means that the plaintiff must show "'a direct causal link' between the policy

10

and the alleged constitutional violation such that the [municipal policy] can be deemed the 'moving force' behind the violation.'" *Id.* at 402 (quoting *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004)). A Plaintiff can establish an illegal policy or custom by showing one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess*, 735 F.3d at 478.

Here, Plaintiff's *Monell* claim appears to fall under either the first or fourth category of *Monell* claims identified above. To prevail under the first category—the policy or legislative enactment category, "a plaintiff must 'identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy.'" *Jackson v. City of Cleveland*, 925 F.3d 793, 829 (6th Cir. 2019) (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). However, when proceeding under this theory, "the plaintiff must show that there were 'formal rules or understandings—often but not always committed to writing—that [were] intended to, and [did], establish fixed plans of action to be followed under similar circumstances consistently and over time.'" *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986).

With regard to the first category (i.e., policy or legislative enactment) Plaintiff has failed to state a viable *Monell* claim. Although Plaintiff claims that the Ironton Defendants have a policy of "targeting proponents of First Amendment protected activities," Plaintiff has not, nor could he, point to any "formal rules or understanding," written or unwritten, "establish[ing] fixed plans of action to be followed under similar circumstances consistently and over time." *Id.* (quoting

11

*Pembaur* 475 U.S. at 480-81). Accordingly, Plaintiff has clearly failed to state a claim under the first theory of *Monell* liability.

To prevail under the fourth category—i.e., the existence of a custom of tolerance or acquiescence of federal rights violations—a plaintiff must satisfy the following four-prong test: "(1) a 'clear and persistent pattern' of misconduct, (2) notice or constructive notice on the part of the municipality, (3) the defendant's tacit approval of the misconduct, and (4) a direct causal link to the violations." *Griham v. City of Memphis Tennessee*, 2022 WL 989175, *6 (W.D. Tenn.) (quoting *Nouri v. County of Oakland*, 615 Fed.Appx. 291, 296 (6th Cir. 2015)). Inevitably, to succeed under this theory, a Plaintiff's Complaint must contain "allegations of . . . similar incidents." *Nouri* at 296. In other words, when a plaintiff "has only his own experience on which to rely, . . . that is not enough to state a claim." *Id.*

Here, Plaintiff also fails to state a viable *Monell* claim under the fourth category (i.e., custom of tolerance or acquiescence). Plaintiff attempts to establish a custom based solely on his own experience. And as previously indicated, the Sixth Circuit in *Nouri* explicitly held that such an approach "is not enough to state a claim." *Id.* Accordingly, because Plaintiff has failed to satisfy the necessary requirements for a *Monell* claim under any theory of liability, his *Monell* claim must be dismissed.

**F. The Ironton Defendants are entitled to qualified immunity.**

To state a claim for relief under § 1983, "a plaintiff must allege a violation of a right secured by the federal Constitution or laws and must show that the violation was committed by a person acting under color of state law." *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010). Additionally, once a defendant raises the affirmative defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not, in fact entitled to qualified immunity. *Hall v. Sweet*,

12

666 Fed.Appx. 469, 474 (6th Cir. 2016) (citing *Rodriguez v. Passinault*, 637 F.3d 675, 689 (6th Cir. 2011)).

Under the doctrine of qualified immunity, "'government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would know.'" *Hager v. Pike County Bd. of Educ.*, 286 F.3d 366, 371 (6th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982)). Consequently, the determination of whether qualified immunity shields a defendant involves a two-part inquiry—a court must determine (1) whether the plaintiff suffered a violation of his constitutional rights; and (2) whether the constitutional right in question was a clearly established constitutional right of which a reasonable person would know. *Id.* "These prongs of the qualified immunity test may be addressed in any order." *Godboldo v. County of Wayne*, 686 Fed.Appx. 335, 339 (6th Cir. 2017) (citing *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808 (2009)). Further, "[t]he burden is on the plaintiff to show that the officials are not entitled to qualified immunity." *Campbell v. Dundee Community Schools*, 661 Fed.Appx. 884, 889 (6th Cir. 2016) (citing *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010)).

As explained herein, the allegations in Plaintiff's Complaint fail to demonstrate that the Ironton Defendants violated a constitutional right, let alone a right that was clearly established. Accordingly, the Ironton Defendants are entitled to qualified immunity.

### III. <u>CONCLUSION</u>

In light of the foregoing, the Ironton Defendants respectfully request that this Court grant their Motion for Judgment on the Pleadings, and dismiss Plaintiff's claims addressed herein, with prejudice.

        Respectfully submitted,

        SURDYK, DOWD & TURNER CO., L.P.A.

        */s/ Dawn M. Frick*
Jeffrey C. Turner (0063154)
Dawn M. Frick (0069068)
Nathaniel W. Rose (0099458)
8163 Old Yankee Street, Suite C
Dayton, Ohio 45458
(937) 222-2333, (937) 222-1970 (fax)
jturner@sdtlawyers.com
dfrick@sdtlawyers.com
nrose@sdtlawyers.com
*Trial Attorneys for Pam Wagner, Brad Spoljaric, Chance Blankenship, Evan McNight, Robert Fouch, and the City of Ironton, Ohio*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on September 29, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, a copy of which will automatically be forwarded to the parties or their counsel of record and I certify that I have mailed by United States Postal Service First Class mail and by electronic mail, the document to the parties not participating in the electronic filing system:

    Jose Maria DeCastro
    1258 Franklin Street
    Santa Monica, CA 90404
    iamalaskan@gmail.com

        */s/ Dawn M. Frick*
        Dawn M. Frick (0069068)