# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| JOSE MARIA DECASTRO<br><br>*Plaintiff,*<br>vs.<br><br>PAM WAGNER, in her individual and official capacities,<br>BRAD SPOLJARIC, in his individual and official capacities,<br>CHANCE BLANKENSHIP, in his individual and official capacities,<br>EVAN MCKNIGHT, in his individual and official capacities,<br>officer FOUCH, in his individual and official capacities,<br><br>*Defendants,* | Case No.: 22-cv-00204<br><br>Plaintiff's Response in Opposition to Defendants' Motion for Judgment on the Pleadings |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW**, Plaintiff, Jose Maria DeCastro, appearing *pro se* in the above-titled cause, hereby files this, his Response to Defendants' Motion for Judgment on the Pleadings per Rule 12 (c), and also addresses Defendants' claims of qualified immunity in compliance with FRCP 6(d).

Although Defendants filed a Motion to Dismiss, an Answer, and a Motion for Judgment on the Pleadings in response to Plaintiff's First Amended Complaint, this filing is responsive to all three of the aforementioned documents.

## I. SUMMARY

1. Plaintiff is a videographer, vlogger, and civil rights activist who has been publishing on media forums such as YouTube, Facebook, Instagram and the like since approximately 2020.

2. On Tuesday, March 29, 2022, at approximately 4:00 p.m., Plaintiff and approximately 14 other individuals were in the Ironton City Hall waiting hours for a permit to use one of the rooms for a constitutional teaching session. At approximately 5 p.m., a City of Ironton employee announced that the building was closing.

3. At approximately 5:03 p.m., WAGNER approached only Plaintiff and began yelling at Plaintiff to "cease and desist his unlawful activity", however Plaintiff was arrested before he even knew what WAGNER was referencing as "unlawful activity". Plaintiff was not allowed to leave the building but was arrested by Defendants SPOLJARIC, BLANKENSHIP, MCKNIGHT, and FOUCH.

4. The other 14 individuals were not yelled at, or arrested but were given time to leave the building.

5.  Plaintiff was taken to the booking area where several criminal charges were brought against him. In addition, Plaintiff was patted down, searched, all his property was taken including his wallet, car key, and his iPhone 12 Max Pro, and miscellaneous other items.

6.  While in custody, Plaintiff's Social Security number was extracted from him under threat and duress.

7.  After posting bond Plaintiff was released, his property was returned with the exception of his Iphone IPHONE DATE RETURN which would require numerous demands and finally filing a replevin to retrieve. Once the Iphone was returned, it was evident that had been searched and damaged.

8.  Numerous other harassments have continued against Plaintiff since this original incident which seem to be designed to prevent and deter his First Amendment protected activities to record the police and other public officials and to report on their activities in Ironton.

## II.  MEMORANDUM OF POINTS AND AUTHORITIES

### a. LEGAL STANDARD MOTION FOR JUDGMENT ON THE PLEADINGS

9.  Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.

10.  "To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right

secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 562 (6th Cir. 2011) (quoting *Marvin v. City of Taylor*, 509 F.3d 234, 243 (6th Cir. 2007)).

11. A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges a complaint's compliance with the pleading requirements of the Federal Rules. In reviewing a motion brought pursuant to Rule 12(b)(6), the reviewing Court 'accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff.' *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." " *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the Court to infer "the mere possibility of misconduct" do not constitute a short and plain statement of the claim showing that the pleader is entitled to relief as required by FRCP 8(a)(2). *Id.*

at 677, 679 (explaining that Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). *Id.* Moreover, a complaint will not be dismissed merely because it contains an "imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 135 S. Ct. 346, 346, 190 L.Ed.2d 309 (2014).

12. Analysis of a 12(b)(6) motion is confined to the pleadings and attachments thereto. In evaluating a motion to dismiss under Rule 12(b)(6) the court accepts as true all factual allegations in the complaint, and construes ambiguous allegations in the plaintiff's favor. *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997).

13. A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard of review as a motion under Rule 12(b)(6). *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005).

### b. DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

14. Defendants in their Motion for Judgment on the Pleadings, claim that probable cause existed for the arrest on March 29, 2022, based on assertions that at 5pm Plaintiff was notified that the building was closing and refused to leave when told to do so when he was not privileged to be there.

15. Defendant's argument is summarized in their statement "Thus, by Plaintiff's own admission, he remained on the property after closing and refused to leave when told to do so. Therefore, the Ironton Defendants had probable cause to place Plaintiff under arrest."[1]

16. In fact, Plaintiff did not refuse to leave when Wagner approached him but was surprised and standing stationary.[2] WAGNER held her hand out in a "STOP" position and Plaintiff was effectively seized at that moment. He did not feel free to walk away from WAGNER or leave the building.

17. A seizure by means of a show of authority requires both a show of authority and submission to that authority. *Id.* at 628-29. An officer effects a seizure by means of a show of authority where "the officer's words and actions would have conveyed . . . to a reasonable person" that "he was being ordered to restrict his movement," and those words and actions actually "produce his stop." *Id.* at 628. Certain "circumstances . . . might indicate a seizure, even where the person did not attempt to leave," including "the display of a weapon by an officer . . . or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980).

---

[1] Doc#23, PAGEID 171
[2] First Amended Complaint Exhibit 1 5:06 to 5:12

18.  It is the totality of the circumstances that is evaluated when courts decide if a citizen was seized. In this case, Plaintiff was also surrounded by the other defendant officers.

19.  Here, Plaintiff expressed that he was willing to go with them, i.e. out of the building. "I'm more than willing to go with you", Then WAGNER interrupted him, saying "you will? Let's go."[3] Plaintiff realized they were not escorting him from the building, but arresting him. Plaintiff then stated, "If I'm under arrest, I'll go with you". Then he was formally arrested. None of the other appx. 14 people were arrested but were simply allowed to leave. Plaintiff immediately yielded to the officers show of authority, and did not refuse to leave the premises as demonstrated in the pleadings.

20.  It is well established that every person has privilege to enter public buildings. Plaintiff entered lawfully, and did not commit any crime. It could be said *arguendo* that Defendants had reasonable suspicion to investigate and determine if Plaintiff and the 14 other individuals would leave peaceably since they were still in the lobby after 5 p.m. but that does not easily translate into probable cause to arrest Plaintiff. *See State v. Shelton*, 63 Ohio App. 3d 137, 139-140:

---

[3] First Amended Complaint Exhibit 1 5:06 to 5:12

"As a general rule, a person has the right to enter and be upon the public areas of public property. So we have to ask: May a county official revoke such a privilege when the official finds that person to be a nuisance? We think not."

21. Considering the fact that no other individuals were arrested, the Defendants may not now argue that Plaintiff was not arrested for his First Amendment activities as he was selectively and specifically targeted and called by name.

22. The conscious exercise of some selectivity in enforcement is not in itself a violation of the United States Constitution. *Oyler v. Boles*, 368 U.S. 448, 82 S. Ct. 501, 505, 7 L. Ed. 2d 446 (1962). In order for selective enforcement to reach the level of unconstitutional discrimination the discrimination must be "intentional or purposeful." *Snowden v. Hughes*, 321 U.S. 1, 64 S. Ct. 397, 401, 88 L. Ed. 497 (1944). The Ohio Supreme Court has held that in order to demonstrate intentional and purposeful discrimination, a defendant must make a prima facie case showing that while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge, the claimant is singled out for prosecution, and the government's discriminatory selection of the claimant for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent the claimant from

exercising his or her constitutional rights. *State v. Flynt*, 63 Ohio St.2d 132, 134, 407 N.E.2d 15, 17 (1980) (*quoting United States v. Berrios*, 501 F.2d 1207, 1211 (2nd Cir. 1974); *Gardenhire v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000) (*citing United States v. Anderson*, 923 F.2d 450, 453 (6th Cir.1991)).

23. Regarding Plaintiff's due process claims, Plaintiff's phone was not returned to Plaintiff when he was released from custody, he was required to file a replevin to retrieve the phone, then it was damaged when it was returned. Additionally, the phone had been searched[4], despite an application for a search warrant being denied.

24. Further, the Defendants proffer the Entry Order regarding the Replevin action from the state court as evidence that the state court already addressed any damage concerns. However, there was no replevin hearing. The order referred to as Exhibit E[5] was issued after a pretrial criminal hearing had been conducted. Directly after the hearing, WAGNER approached Plaintiff and handed him his Iphone in a bag. Exhibit E "Entry", demonstrates that the phone was returned to Decastro during the hearing, but it was after the hearing that the phone was returned to Plaintiff. Therefore, the Plaintiff was

---

[4] DOC #23-3 PGID# 213 Entry Regarding Application for Search Warrant
[5] DOC#23-5 PGID# 217 Defendant's Motion for Judgment on Pleadings Exhibit E

unable to even view the phone during the hearing, let alone report any damages.

25. This "Entry" did not reflect the actual facts at the time of the hearing, and appears to contain a boilerplate sentence regarding damages which did not reflect any actual facts surrounding the hearing.

26. Further regarding the First Amendment Retaliation, Defendants state that there is no underlying constitutional violation that this claim can rest upon, however an unlawful arrest based on First Amendment activities is certainly such a violation. People in the building with Plaintiff whom were similarly situated, were not arrested, but rather WAGNER stepped around at least one of those individuals in order to seize Plaintiff as she knew him by name.

27. The Qualified Immunity analysis begins by viewing the allegations in the complaint in the light most favorable to the Plaintiff, once there appears that a violation of rights secured by the Constitution has been pled, then the analysis moves to whether the right(s) were clearly established in the specific judicial circuit.

28. Plaintiff has alleged sufficient facts comprising unlawful arrest that when construed to be true constitute 4th Amendment violations. Plaintiff has also alleged sufficient facts comprising unlawful search and seizure of his phone which construed to be true constitute additional 4th amendment

violations. Plaintiff has alleged sufficient facts comprising 14th Amendment violations stemming from phone search and seizure.

29. Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. When an officer raises a qualified immunity defense, we determine (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established. *Butler v. City of Detroit*, 936 F.3d 410, 414 (6th Cir. 2019).

30. In the 6th Circuit, it is clearly established that an arrest not supported by probable cause violates the Fourth Amendment. *Stahl v. Coshocton Cty.*, 754 F. App'x 335 (6th Cir. 2018).

31. Plaintiff's injuries stem from the incident on March 29, 2022 which is the subject of this suit. The arrest was conducted with no probable cause thereby viscerating any qualified immunity.

32. To find a municipality liable under §1983, a plaintiff must establish that (1) a policymaker (2) promulgates a policy or custom (3) that is the "moving force" of a violation of constitutional rights. *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). An official policy "usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so

common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *288 *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001)). The policy must be either unconstitutional or "adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result." *Id.* (internal quotation marks omitted).

33. Failure to train may represent a policy for which the city may be held liable only if it directly causes injury. *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The fact that an officer could be "unsatisfactorily trained" is not enough to trigger the municipality's liability. *Id.* at 390–91, 109 S.Ct. 1197. The plaintiff must show that (1) the training policy was deficient, (2) the County was deliberately indifferent to this deficiency in adopting the policy, and (3) the deficient training policy directly caused the constitutional violation. *Shumpert v. City of Tupelo*, 905 F.3d 310, 317 (5th Cir. 2018).

34. However, sufficient proof to find a policy maker ultimately liable under §1983 is a different standard than that needed at the pleading stage to overcome a motion made pursuant to Rule 12(b)(6). *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (a federal court may not apply a standard "more stringent than the usual pleading requirements of Rule 8(a)"

in "civil rights cases alleging municipal liability"); *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)

35. In its Motion Defendants essentially make three points for dismissal in their brief, (1) Plaintiff has alleged no facts showing a formal policy(2), Plaintiff has not plead any widespread custom of similar instances, even in conclusory form, and (3) Plaintiff has conclusory allegations that the City of Ironton had tolerance or acquiesced to any policy.

36. In the instant case, Plaintiff has provided a significant amount of detail in the form of exhibits which are part of the general factual allegations that support his complaint.

37. Plaintiff alleges that he was arrested without probable cause as WAGNER and the officer DEFENDANTS knew Plaintiff was not engaged in the act of committing a crime. Further Plaintiff has alleged it was due to the practices of the CITY OF IRONTON.

38. As such Plaintiff is only required to plead facts. *See Groden v. City of Dallas, Texas*, 826 F.3d 280, 285 (5th Cir. 2016) Thus, to survive a motion to dismiss, Groden needed only to plead facts—facts which establish that the challenged policy was promulgated or ratified by the city's policymaker. *See also Johnson*, 135 S.Ct. at 346 "...courts should not grant motions to dismiss § 1983 cases "for imperfect statement of the legal theory," we see that courts

should not grant motions to dismiss for failing to plead the specific identity of the policymaker. *See Johnson*, 135 S.Ct. at 346.

39. If the underlying facts were lacking, which is all that is required of Plaintiff at the pleading stage, he should be given leave to add them. *See* Fed. Rule Civ. Proc. 15(a)(2) "The court should freely give leave [to amend a pleading] when justice so requires."

### III. CONCLUSION AND PRAYER

40. WHEREFORE, Plaintiff has clearly demonstrated that the causes of action are supported with the facts and the exhibits attached to Plaintiff's First Amended Complaint. Plaintiff respectfully requests that the Defendants' Motion be denied in its entirety as discussed in this response, so that this case can proceed and be decided on the merits. Further, Plaintiff has clearly demonstrated had he not been engaged in first amendment protected activities, he would not have been approached or seized by the Defendants.

DATED this 30th day of November, 2022.

*Jose Maria DeCastro*

Jose Maria DeCastro, *Pro Se*
1258 Franklin Street
Santa Monica, CA 90404
(310) 963-2445
Email: iamalaskan@gmail.com

## CERTIFICATE OF SERVICE

I, Jose Maria DeCastro, Plaintiff in this matter, do hereby certify that, on the November 30, 2022, the foregoing document was sent to be filed in the captioned court and served upon the following defendants via the courts ECF system and/or regular mail:

**Dawn M Frick**
Surdyk, Dowd & Turner Co., L.P.A.
8163 Old Yankee St.
Suite C
Dayton, OH 45458
937-222-2333
Fax: 937-222-1970
Email: dfrick@sdtlawyers.com
*LEAD ATTORNEY* FOR DEFENDANTS
*ATTORNEY TO BE NOTICED*

**Jeffrey Charles Turner**
Surdyk Dowd & Turner
8163 Old Yankee St
Suite C
Dayton, OH 45458
937-222-2333
Email: jturner@sdtlawyers.com
*ATTORNEY TO BE NOTICED FOR DEFENDANTS*

**Nathaniel William Rose**
Surdyk, Dowd & Turner Co., LPA
8163 Old Yankee St
Suite C
Dayton, OH 45458
937-626-7099
Email: nrose@sdtlawyers.com
*ATTORNEY TO BE NOTICED FOR DEFENDANTS*

*Jose Maria DeCastro*

Jose Maria DeCastro, *Pro Se*