UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION, CINCINNATI

| | | |
|---|---|---|
| JOSE MARIA DECASTRO, | : | CASE NO. 1:22-cv-00204 |
| | : | |
| Plaintiff, | : | Judge Michael R. Barrett |
| | : | Magistrate Judge Stephanie K. Bowman |
| v. | : | |
| | : | DEFENDANTS PAM WAGNER, BRAD |
| PAM WAGNER, ET AL., | : | SPOLJARIC, CHANCE BLANKENSHIP, |
| | : | EVAN MCNIGHT, ROBERT FOUCH, |
| Defendants. | : | AND THE CITY OF IRONTON, OHIO'S |
| | : | REPLY IN SUPPORT OF THEIR |
| | : | MOTION FOR JUDGMENT ON THE |
| | : | PLEADINGS |

Now come Defendants Pam Wagner, Brad Spoljaric, Chance Blankenship, Evan McNight, Robert Fouch, and the City of Ironton, Ohio ("the Ironton Defendants"), and for their Reply in Support of their Motion for Judgment on the Pleadings, state as follows:

I. **PLAINTIFF HAS NOT SATISFIED HIS BURDEN TO OVERCOME THE IRONTON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff can prove no set of facts in support of his claims that would entitle him to relief. Plaintiff sets forth four causes for relief, namely, alleged violations of the Fourth Amendment, Fourteenth Amendment (Due Process), First Amendment and a *Monell* claim.

As an initial matter, Plaintiff's Response in Opposition to Defendants' Motion for Judgment on the Pleadings ("Response") has ventured well beyond the bounds of the pleadings. A motion for judgment on the pleadings tests the sufficiency of the allegations contained in the complaint and answer. Plaintiff does not have carte blanche to add allegations and factual assertions. Furthermore, and as outlined *infra*, Plaintiff's piecemeal adoption of facts and generally disingenuous self-serving adaptation of the facts should be taken into consideration by this Court. As such, the Ironton Defendants have filed a Motion for Leave to Manually File, which if granted,

1

will be comprised of a flash drive containing a true and accurate copy of the full video recorded by Plaintiff of his arrest ("Video"). Plaintiff put the video at issue by attaching it to his Amended Complaint.[1] However, he intentionally cut out portions of the video. Seeing as Plaintiff argues a theory of selective enforcement, it is integral that the Court have access to <u>all of the facts surrounding Plaintiff's arrest</u>. (Emphasis added.) Furthermore, the Sixth Circuit allows for the consideration of video evidence at the pleading stage through Federal Rule of Civil Procedure 10(c) even when the video was attached to the pleadings by the moving party/defendant. *See Osberry v. Slusher,* 750 Fed.Appx. 385, fn. 2 (6th Cir. 2018). Here, Plaintiff put the video at issue. Thus, this Court should consider the full unredacted version of the video.

### A. Plaintiff has failed to establish that he was arrested without probable cause; thus, his Fourth Amendment claim must fail.

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S.Ct. 588 (2004). "[T]he validity of the arrest does not depend on whether the suspect actually committed the crime. . . ." *Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S.Ct. 2627 (1979). As a result, "in order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002).

Plaintiff has failed to establish that the Ironton Defendants did not have probable cause to arrest him for criminal trespass. Prior to the police arriving, in response to being told the building closed at 5:00 p.m. by the building staff, Plaintiff replied "were not leaving, we're protesting." (Video, 1:50-2:10; Doc. 20, PageID 134; Doc 20-1, 0:00-0:17). The criminal trespass statute in

---

[1] Plaintiff failed to serve the Ironton Defendants with a copy of the video he filed, despite requests to do so. The Ironton Defendants were forced to obtain a copy from the court at additional time and expense to them.

2

Ohio provides "[n]o person, without privilege to do so, shall * * * [k]nowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes, or hours, when the offender knows the offender is in violation of any such restriction or is reckless in that regard" or "[b]eing on the land or premises of another, negligently fail or refuse to leave upon being notified by signage posted in a conspicuous place or otherwise being notified to do so by the owner or occupant, or the agent or servant of either." R.C. § 2911.21(A)(2) and (4). Here, Plaintiff was on explicit notice from the building staff that the building was closed, and he was trespassing at that time. Of further consequence, Plaintiff, by his own admission, states that that he was not approached by the police until 5:03 p.m. Consequently, Plaintiff had effectively already committed criminal trespass and was subject to a lawful arrest. It should also be noted that pursuant to R.C. 2911.21(A)(5), it is not a defense to the charge that the premises is owned or controlled by a public agency. The Ohio Revised Code defines "privilege" as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." *Skovgard v. Pedro*, 448 F. App'x 538, 544 (6th Cir. 2011) citing § 2901.01(A)(12).

Plaintiff had no privilege to be on the property. When the police arrived, the very first statement made to Plaintiff was "cease and desist your disorderly conduct or you will be arrested * * * Vacate right now or you'll be arrested" (Video, 3:15-3:25; Doc 20-1, 1:30-1:40; Doc. 20, PageID 135). In response, Plaintiff stood still instead of turning around and exiting. (Video, 3:15-3:30; Doc 20-1, 1:30-1:45; Doc. 32, PageID 418). In Plaintiff's Response, he asserts that when this happened "he did not feel free to walk away from Wagner or leave the building" and "Plaintiff was effectively seized at that moment." (Doc. 32, PageID 418). Plaintiff's manipulation of the facts to address the glaring issues in his pleadings should be afforded no consideration. More

3

specifically, and as an initial matter, Plaintiff alleges in his Amended Complaint, that he was arrested by Spoljaric, Blankenship, McKnight, and Fouch—not Wagner. (*Compare* Doc. 20, PageID 135, ¶ 11 *with* Doc. 32, PageID 418, ¶ 16). Even further, Plaintiff's Response contradicts his statement that Pam Wagner had effectively seized and arrested him. A few paragraphs later, Plaintiff states he did not realize he was being arrested until he was being escorted from the lobby when Pam Wagner is no longer present or in the video. (*Compare* Doc. 32, PageID 135, ¶ 16 *with* Doc. 32, PageID 419, ¶ 19). This is even further contradictory to his express understanding of the situation as Plaintiff stated, "they're arresting me" before being escorted out of the lobby. (Video, 3:53; Doc 20-1, 2:03). Ultimately, even if the Court considers or adopts any one of Plaintiff's theories, it is of no consequence to whether he was lawfully arrested.[2]

Plaintiff further contends that he was not "given time to leave the building" and "[a]t no time did [Plaintiff] refuse to leave." (Doc. 20, PageID 135). Presumably, Plaintiff is referring to the allegations in his Amended Complaint. Therein, he states that the Ironton Defendants "failed to comply with the state of Ohio peaceful protest statutes, policies, and procedures when they encountered plaintiff on 3/29/22. Instead of directing and escorting plaintiff out of the building per the statutes, these defendants chose to make an arrest." (Doc. 20, PageID 138). Plaintiff's Response fails to identify any statute that would permit his conduct because no such statute exists. (*See generally* Doc. 32). First off, criminal trespass does not require an explicit refusal to leave a property. Rather, it requires, in this instance, knowingly staying on property which is lawfully restricted to certain hours. *See* O.R.C. § 2911.21(A)(2). Plaintiff knowingly stayed on the property past when he was privileged to do so. The building staff told him the building was being closed at

---

[2] It should be noted that Plaintiff failed to appear for his criminal case and a warrant has been issued for his arrest. On a Rule 12(b)(6) or 12(c) motion, "the 'court may take judicial notice of other court proceedings without converting the motion into one for summary judgment.'" *Scott v. Reif*, 659 Fed.Appx. 338, 342 (6th Cir. 2016) (quoting *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2020)).

5:00 p.m. (Video, 1:50-2:10; Doc. 20, PageID 134; Doc 20-1, 0:00-0:17). At that time, the exit to the building can be observed in the video just a few feet away. (*See generally* Video; Doc. 20-1). Yet, Plaintiff purposely did not leave, even though he had time to do so. (Id.) Rather, he lectured those present on how to video police when protesting. (Id.) Furthermore, Plaintiff explicitly stated to the building staff "were not leaving, we're protesting." (Video, 1:50-2:10; Doc. 20, PageID 134; Doc 20-1, 0:00-0:17). Thus, Plaintiff's argument that he was not given time to exit the building is disingenuous at best.

Finally, Plaintiff contends that when the officers arrived, at that point he was willing to exit the building and "did not refuse to leave premises." (Doc 32, PageID 419). However, his actions dictate otherwise. (See Video, 3:15-3:25; Doc 20-1, 1:30-1:40) (Plaintiff failed to exit or otherwise head toward the exit after being order "cease and desist your disorderly conduct or you will be arrested * * * Vacate right now or you'll be arrested.") Again, this Court need not consider this argument, as Plaintiff was committing criminal trespass for the three minutes prior to the police arriving.

Plaintiff points to *State v. Shelton,* 63 Ohio App.3d 137, 578 N.E.2d 473 (4th Dist. 1989) in support of notion that the officers should have determined whether Plaintiff would peaceably leave. (Doc. 32, PageID 419). However, *Shelton* is highly distinguishable in virtually every respect. Of critical importance is that the public lobby at issue in *Shelton* was open to public twenty-four hours a day. *Id.* Furthermore, the person had been asked to leave earlier in the day and was arrested when she returned later that night. *Id.*  However, she was not asked to leave before being arrested when she returned. *Id.*  Finally, the deputy admitted that he arrested her because she was a "nuisance." *State v. Shelton,* 63 Ohio App.3d 137, 139, 578 N.E.2d 473, 474 (4th Dist. 1989). When contrasted against the facts herein, it is abundantly clear the difference in

5

circumstances. Plaintiff knew the building was closed and was no longer open to the public; he was ordered to leave by both building staff and police officers; he explicitly refused their order; and was arrested for criminal trespass, not because he was a "nuisance."

While Plaintiff is correct in pointing out that he lawfully entered the building and that every person has privilege to enter public buildings, Plaintiff's argument that the Ironton Defendants revoked his privilege is incorrect. The Ironton Defendants did not revoke his privilege. Any privilege Plaintiff had was extinguished at 5:00 p.m. when the building lawfully closed to the public and he refused to leave and obey the building staff's order to exit the building. As outlined *supra*, and by Plaintiff's own admission, he knowingly stayed on the property past 5:00 p.m. and was subject to be lawfully arrested pursuant to criminal trespass. Accordingly, Plaintiff has failed overcome the Ironton Defendants' argument regarding Plaintiff's Fourth Amendment unlawful arrest claim.

### B. Plaintiff has failed to establish that his iPhone was unlawfully searched.

As an initial matter, Plaintiff's iPhone was seized pursuant to a lawful arrest as discussed herein. As to Plaintiff's claims that the Ironton Defendants illegally searched his phone, Plaintiff has provided no basis upon which the Court should accept this allegation as true. Rather, the Ironton Defendants applied for a search warrant to access Plaintiff's phone and the application was denied. (Doc. No. 23-3). If the Ironton Defendants were planning to search Plaintiff's phone irrespective of the court's order, they would not have filed for the warrant in the first place. Thus, this allegation should be disregarded by this Court.

### C. Plaintiff has failed to support or demonstrate that he is entitled to relief under the First Amendment.

The Ironton Defendants did not retaliate against Plaintiff for exercising his First Amendment rights. Rather, as noted above, he was arrested for trespassing on property after he

6

had been asked to leave on more than one occasion.  Plaintiff's Amended Complaint alleges that he was retaliated against by the Ironton Defendants to prevent him from exercising his First Amendment rights, including to record public officials. More specifically, they kept [Plaintiff's] main recording device from him "[i]n order to impede, stop, otherwise deter [Plaintiff] from filming public officials, conducting and recording interviews, and other investigatory filming." (Doc. 20, PageID 139). To succeed on a First Amendment retaliation claim, Plaintiff must prove the following elements:

> (1) [he] engaged in constitutionally protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by [his] protected conduct.

*Wurzelbacher v. Jones–Kelley,* 675 F.3d 580, 583 (6th Cir.2012). Here, Plaintiff alleges that the Ironton Defendants retaliated against him for exercising his First Amendment rights by arresting him and by searching and damaging his phone. Plaintiff's First Amendment claim is deficient for several reasons.

First, Plaintiff has the burden of showing that the conduct he was engaged in was constitutionally protected. Although the building at issue houses government agents and offices, The Amended Complaint does not plead or allege he was engaged in any protected activity. Rather, Plaintiff alleges he was waiting "for a permit to use of one the rooms for a constitutional teaching session." (Doc. 20, PageID 134.)  Plaintiff does not indicate that he applied for a permit or was engaged in any other protected activity at the time he was criminally trespassing in the building. Consequently, Plaintiff has failed to establish the predicate protected conduct for the Ironton Defendants alleged misconduct. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950, 556 U.S. 662, 679 (2009) (quoting Fed. Rule Civ. Proc. 8(a)(2)) ("Where the well-pleaded facts do not permit

7

the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'")

As to the alleged adverse action, where the adverse action takes the form of an arrest and subsequent prosecution, the plaintiff must show an absence of probable cause. *Hartman v. Moore*, 547 U.S. 250, 252, 265–66, 126 S.Ct. 1695, 164 (2006)(retaliatory prosecution); *Nieves v. Bartlett*, 139 S. Ct. 1715, 1726 (2019)(retaliatory arrest). Here, as is set forth fully above, the Ironton Defendants had probable cause for the arrest because Plaintiff was criminally trespassing. As to Plaintiff's remaining allegations of searching and damaging his phone, these allegations are above and below respectively.

To the extent that Plaintiff is pleading that he was prevented from recording public officials after he was released from custody and because the Ironton Defendants seized his iPhone 12, he was the subject of a lawful arrest and the protected conduct complained of occurred ex-post facto. There is no precedent that the ability to regain possession of one's property for purposes of recording public officials after a lawful arrest falls within the confines of protected First Amendment conduct. Thus, Plaintiff has failed to even establish that the conduct is protected under the First Amendment. Furthermore, and as outlined below, the recovery of his property, or lack thereof is an issue for state courts.

Finally, there is no connection between the activity and the Ironton Defendants' motivation for arresting the Plaintiff. In fact, Pam Wagner explicitly states, "cease and desist your disorderly conduct or you will be arrested * * * Vacate right now or you'll be arrested" (Video, 3:15-3:25; Doc 20-1, 1:30-1:40; Doc. 20, PageID 135). Contrary to Plaintiff's belief, there is not a scintilla of evidence that his arrest stemmed from any other activity than his criminal trespass. Of further consequence, the Ironton Defendants allowed Plaintiff to continue filming for several minutes after

8

Plaintiff claims he was seized and arrested—regardless of when Plaintiff claims that occurred—further supporting the Ironton Defendants' argument that they were not concerned with his speech or recording activities. (*See generally* Video; Doc 20-1.) Irrespective of Plaintiff's First Amendment theory of recovery, he has failed to establish that he is entitled to relief at every elemental level of this claim.

Additionally, in an effort to attempt to bolster his claim, Plaintiff in his memorandum now implies an equal protection violation of selective enforcement, however a cursory review of his Amended Complaint reveals that such a claim was never alleged and thus, should not be considered in response to a Motion for Judgment on the Pleadings. Notwithstanding the foregoing, Plaintiff cannot establish a claim of selective enforcement. First, as noted by Plaintiff "[t]he conscious exercise of some selectivity in enforcement is not in itself a violation of the United States Constitution. *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 505 (1962). In fact, the *Oyler* case goes further to state that in that case the petitioner did not state that the selection "was deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification. *Id.* To successfully plead a selective enforcement claim, Plaintiffs must satisfy the following three elements:

> First, [a state actor] must single out a person [or persons] belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. Second, he must initiate the prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to. *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir.1997) (citing *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir.1991)).

*Libertarian Party of Ohio v. Husted*, 188 F. Supp. 3d 665, 670–71 (S.D. Ohio), *aff'd*, 831 F.3d 382 (6th Cir. 2016). Although Plaintiff has failed to plead such a claim or facts in support of such a claim, it is important to note that while Plaintiff was ultimately the only person arrested for

criminal trespass when others were supposedly present, Plaintiff is the only person seen or heard explicitly refusing the building staff's request to exit the building at 5:00 p.m. (Video, 1:50-2:10; Doc 20-1, 0:00-0:17). Plaintiff has not pled that similar to his actions, the "approximately 14 other individuals" explicitly refused to leave the building when ordered to by the building staff and ignored the Ironton Defendants cease and desist order. (*See generally* Doc. 32), nor has he pled that he was singled out for a discriminatory purpose. Accordingly, not only has he not sufficiently pled a First Amendment retaliation claim, but he has also failed to properly plead a selective enforcement claim.

### D. Plaintiff has failed to demonstrate that he is entitled to relief under the Fourteenth Amendment.

Plaintiff's Fourteenth Amendment due process claims stem from his allegation that the Ironton Defendants unlawfully withheld and damaged his iPhone. As an initial matter, Plaintiff failed to allege any facts indicating that his remedies under Ohio law are inadequate to redress this alleged wrong. The Sixth Circuit has specifically held that state remedies, such as the replevin proceeding under state law, are an adequate remedy for individuals seeking property that has been seized by police. *International Metal Trading Inc. v. City of Romulus, Mich.*, 438 Fed.Appx. 460, 463 (6th Cir. 2011). Plaintiff, did in fact, file a replevin action against Ironton Police Department in Ironton Municipal Court Case No. CVH2200076. (See Doc. Nos. 23-4, 23-5). The objective evidence remains that:

> The Court observed the Defendant, Ironton Police Department representative, Pam Wagner, return to the Plaintiff, Jose DeCastro, the IPhone 12 Max, subject of the Replevin action, herein.
>
> Therefore, the Plaintiff has obtained possession of the subject property and no evidence was presented as to any damages, thus, the case herein, is **DISMISSED** with prejudice.

Thus, Plaintiff not only filed a replevin action, but said action provided him adequate procedural due process. Moreover, there is no indication that his phone was damaged at the time of replevin hearing. Accordingly, because Plaintiff has failed to allege any facts indicating that his remedies under Ohio law failed to redress the wrong complained of and are inadequate, he has failed to state a due process claim that is actionable in a § 1983 proceeding.

**E. Plaintiff has failed to support his claim for relief pursuant to *Monell* against the City of Ironton.**

As outlined in the Ironton Defendants' Motion for Judgment on the Pleadings, a *Monell* claim cannot exist without an underlying constitutional violation. Here, the *Monell* claim is based on targeting persons exercising their First Amendment rights, "i.e. recording public officials in the City of Ironton and arrest them, unlawfully search, seize and permanently damage recording devices to deter said protected activities." (Doc. 20, PageID 140). The Ironton Defendants were not targeting persons practicing their First Amendment. Rather, the Ironton Defendants lawfully arrested Plaintiff who was criminally trespassing.

Even though we are testing the sufficiency of Plaintiff's Amended Complaint, his Response still fails to adequately, or with any level of specificity, identify a policy or practice that caused the injuries complained of. Rather, Plaintiff generally states that the "practices of the City of Ironton" led to his arrest without probable cause and that the Ironton Defendants "promulgated the custom practice or policies which enables officers like the defendants to target proponents of First Amendment protected activities, i.e., recording public officials in the City of Ironton and arrest them, unlawfully search, seize and permanently damage recording devices to deter said protected activities." (Doc. 32, PageID 425, ¶¶ 36-37; Doc. 20, PageID 140, ¶ 37).

Plaintiff's *Monell* claim is highly illusory and there is no discernable custom or practice contained therein. As applied here, there are only two routes for Plaintiff to establish a *Monell*

11

claim, i.e., the existence of an illegal official policy or legislative enactment or the existence of a custom of tolerance or acquiescence of federal rights violations. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)

With the regard to an illegal policy or legislative enactive, Plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Jackson v. City of Cleveland*, 925 F.3d 793, 829 (6th Cir. 2019) (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). Furthermore, federal courts require a higher standard of pleading. "Threadbare recital of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). Specifically, "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' provide insufficient grounds for entitlement to relief." *Huffer v. Bogen*, 503 Fed.Appx. 455, 461 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). "What *Twombly* and *Iqbal* do require is that plaintiffs provide factual allegations from which a court may plausibly infer a cause of action." *Gross v. Nationwide Credit, Inc.*, Case No. 1:10-CV-00738, 2011 WL 379167, *3 (S.D. Ohio Feb. 2, 2011). Simply put, Plaintiff's Amended Complaint is devoid of, and fails to identify with any specificity a legislative act or policy of the Ironton Defendants that would pass muster under *Iqbal* and *Twombly*. As such, Plaintiff cannot satisfy this portion of a *Monell* claim as a matter of law.

As to the latter (i.e., custom of tolerance or acquiescence), Plaintiff has not, nor could he, identify any "formal rules or understanding," written or unwritten, "establish[ing] fixed plans of action to be followed under similar circumstances consistently and over time." *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). Furthermore, Plaintiff's Amended Complaint fails to identify any additional instances in which this seemingly unidentifiable custom

resulted in the injury to proponents of the First Amendment due to the Ironton Defendants. (*See generally* Amended Complaint). By implication, Plaintiff attempts to establish a custom based solely on his own experience. The Sixth Circuit in *Nouri* explicitly held that such an approach "is not enough to state a claim." *Nouri v. County of Oakland*, 615 Fed.Appx. 291, 296 (6th Cir. 2015). Similar to the first portion of the *Monell* analysis, Plaintiff has failed to identify any custom or tolerance of the Ironton Defendants that led to Plaintiff's arrest, allegedly without probable cause. Assuming *arguendo* that Plaintiff was arrested without probable cause, he still has failed to sufficiently identify and connect a custom of tolerance or acquiescence of the Ironton Defendants to his arrest. Consequently, Plaintiff's *Monell* claim cannot survive the rigors of *Iqbal* and *Twombly*. Furthermore, as outlined above, there is no underlying constitutional violation; thus, this claim must be dismissed.

### F. Plaintiff has failed to meet his burden, and the Ironton Defendants qualified immunity remains intact.

The only determination left for this Court is whether Plaintiff has met his burden to establish the Ironton Defendants are not entitled to qualified immunity. *Campbell v. Dundee Community Schools*, 661 Fed.Appx. 884, 889 (6th Cir. 2016) (citing *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010)). The determination of whether qualified immunity shields a defendant involves a two-part inquiry—a court must determine (1) whether the plaintiff suffered a violation of his constitutional rights; and (2) whether the constitutional right in question was a clearly established constitutional right of which a reasonable person would know. *Hager v. Pike County Bd. of Educ.*, 286 F.3d 366, 371 (6th Cir. 2002).

Notwithstanding Plaintiffs inability to support a Fourteenth Amendment violation, Plaintiffs cannot point to a "violat[ion] of a clearly established statutory or constitutional rights of which a reasonable [police officer] have known." (citations and internal quotations omitted)

13

*Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, at paragraph two of the syllabus (1982); *Adams v. Metiva,* 31 F.3d 375, 386 (6th Cir.1994). "In order for the violated right to be clearly established, the contours of the right must be sufficiently clear that a reasonable [police officer] would understand that what he or she is doing violates that right; in light of pre-existing law, the unlawfulness of the official's action must be apparent." *Mallory v. City of Riverside*, 35 F.Supp.3d 910, 923-924 (S.D. Ohio 2014), citing *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034 (1987); *Russo v. City of Cincinnati,* 953 F.2d 1036, 1042 (6th Cir.1992). "The right must be defined at the appropriate level of specificity to determine whether it was clearly established at the time the defendants acted." *Id.* (citations omitted).

As an initial matter, Plaintiff argues that an arrest without probable cause is a clearly established right. However, Plaintiff's high level of abstraction does not satisfy the standards enumerated above, i.e., the "clearly established" right prong of the qualified immunity analysis. *See Reiche v. Howards,* 566 U.S. 658, 665, 132 S.Ct. 2088 (2012) ("[W]e have previously explained that the right allegedly violated must be established, "'not as a broad general proposition,'" *Brosseau v. Haugen,* 543 U.S. 194, 198, 125 S.Ct. 596 (2004) *(per curiam),* but in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official, *Anderson, supra,* at 640, 107 S.Ct. 3034.")

Furthermore, Supreme Court has further held that "it [is] not clearly established that an arrest supported by probable cause could give rise to a First Amendment violation." *Reiche v. Howards,* 566 U.S. 658, 670, 132 S.Ct. 2088 (2012). In assessing the "clearly established" standard regarding an arrest pursuant to probable cause the Supreme Court held, "[t]he 'clearly established' standard is not satisfied here. This Court has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause." Id. at 664-665, 32 S.Ct. 2088. Thus,

14

Plaintiff's failure to overcome the Ironton Defendants entitlement to qualified immunity is two-fold. More specifically, generally alleging an arrest without probable cause is not sufficient to establish a "clearly established" for purposes of qualified immunity. And, if he did, the probable cause previously established by the Ironton Defendants vitiates and overcomes Plaintiff's argument that he was arrested without probable cause. Consequently, the Ironton Defendants are entitled to immunity and this action must be dismissed.

## II.  CONCLUSION

Based upon all of the foregoing, and those arguments set forth in the Ironton Defendants' Motion for Judgment on the Pleadings, the Ironton Defendants respectfully request that this Court grant their Motion for Judgment on the Pleadings and dismiss Plaintiff's Complaint with prejudice.

    Respectfully submitted,

    SURDYK, DOWD & TURNER CO., L.P.A.

    */s/ Dawn M. Frick*
    Jeffrey C. Turner (0063154)
    Dawn M. Frick (0069068)
    Nathaniel W. Rose (0099458)
    8163 Old Yankee Street, Suite C
    Dayton, Ohio 45458
    (937) 222-2333, (937) 222-1970 (fax)
    jturner@sdtlawyers.com
    dfrick@sdtlawyers.com
    nrose@sdtlawyers.com
    *Trial Attorneys for Pam Wagner, Brad Spoljaric, Chance Blankenship, Evan McNight, Robert Fouch, and the City of Ironton, Ohio*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on February 10, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, a copy of which will automatically be forwarded to the parties or their counsel of record and I certify that I have mailed by United States Postal Service First Class mail and by electronic mail, the document to the parties not participating in the electronic filing system:

    Jose Maria DeCastro
    1258 Franklin Street
    Santa Monica, CA 90404
    iamalaskan@gmail.com

                                          */s/ Dawn M. Frick*_____
                                          Dawn M. Frick (0069068)