**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION, CINCINNATI**

| | | |
|---|---|---|
| **JOSE MARIA DECASTRO,** | : | **CASE NO. 1:22-cv-00204** |
| | : | |
| Plaintiff, | : | **Judge Michael R. Barrett** |
| | : | **Magistrate Judge Stephanie K. Bowman** |
| v. | : | |
| | : | **DEFENDANTS PAM WAGNER, BRAD** |
| **PAM WAGNER, ET AL.,** | : | **SPOLJARIC, CHANCE BLANKENSHIP,** |
| | : | **EVAN MCNIGHT, ROBERT FOUCH,** |
| Defendants. | : | **AND THE CITY OF IRONTON, OHIO'S** |
| | : | **MOTION IN OPPOSITION TO** |
| | : | **PLAINTIFF'S MOTION FOR** |
| | : | **PROTECTIVE ORDER** |

Now come Defendants Pam Wagner, Brad Spoljaric, Chance Blankenship, Evan McNight, Robert Fouch, and the City of Ironton, Ohio ("the Ironton Defendants"), and for their Motion in Opposition to Plaintiff's Motion for Protective Order, state as follows:

**I.     INTRODUCTION & PROCEDURAL POSTURE**

Plaintiff's Complaint was filed with this Court on April 13, 2022. Although the parties have engaged in early motion practice, the case has been delayed multiple times and remained stagnant largely due to the Plaintiff's conduct, unwillingness to participate in an action he chose to prosecute, and for lack of a better word, gameplaying. This is reflected in reviewing the docket and by Plaintiff's actions outlined *infra*.

Before addressing the motion herein, it is important to note the procedural posture and Plaintiff's course of conduct to this stage of litigation. Shortly after Plaintiff commenced this action Major Chapman, Jane Doe, and Lawrence County ("the Lawrence County Defendants") filed their first Motion to Dismiss on May 11, 2022. (Doc. 8.) The Ironton Defendants filed their first Motion for Judgment on the Pleadings on June 21, 2022. (Doc. 15.) When Plaintiff failed to respond, this Court issued two orders to show cause with regard to these motions on June 29, 2022 and July 21,

2022. (Docs. 16 and 17.) The respective deadlines to show cause were July 22, 2022 and August 11, 2022. (Id.) Interestingly, Plaintiff's response was not filed until August 11, 2022. (Doc. 18.) Therein, Plaintiff for the first time claimed that he was not receiving any of the Court's or Defendants' filings *even though his postal address has remained the same since the outset of this case* and he presumably received the show cause orders.[1] (Emphasis added.) (Doc. 18.) Furthermore, Plaintiff noted in his response that he "is committed to prosecuting this litigation and in anticipation of any of defendants' response, has been working diligently to amend his complaint. To date Plaintiff has had nothing to which to respond." (Id.) This Court ultimately granted Plaintiff 30 days to respond or otherwise amend his complaint on August 15, 2022. (Doc. 19.) Plaintiff, who was working "diligently" to prosecute this case, once again waited until the court's imposed deadline—September 15, 2022—to file his Amended Complaint which was largely comprised of the same allegations contained in his initial complaint. (*Compare* Doc. 1 *with* Doc. 20.)

In response to Plaintiff's Amended Complaint, the Lawrence County Defendants and the Ironton Defendants filed their second motion to dismiss and second motion for judgment on the pleadings. (Docs. 21 and 23.) The motions were filed on September 20, 2022 and September 29, 2022.[2] (Id.) Yet again, Plaintiff failed to timely respond and this Court once again issued two orders to show cause. (Docs. 25 and 26.) This time the respective deadlines to show cause were November 17, 2022 and November 30, 2022. (Id.) Plaintiff again failed to timely respond, and this Court terminated the case on December 6, 2022. (Doc. 27.) Plaintiff then filed for leave citing excusable neglect and that he still was not being served with the Court's documents. (Doc. 29.) Again, Plaintiff's address has not changed and he presumably received the order dismissing the

---

[1] Every filing of the Ironton Defendants has been mailed to the same address listed since the outset of this case.
[2] Despite Plaintiff's address remaining the same throughout the entirety of this action, the Ironton Defendants began serving Plaintiff via regular mail and email from Doc. 23 through the present due to Plaintiff's claim "that up and until July 27, 2022, [he] has received nothing from the defendants or this court." (Doc. 18.)

2

case. Nevertheless, despite the Defendants' oppositions and Plaintiff's failure to meet every responsive deadline, this Court revived this case, granted Plaintiff leave, and allowed him to continue pursuing this action. (Docs. 29, 30, 31, and Notation Order dated January 13, 2023.)

After the case was revived in order to advance this case, the Ironton Defendants served Plaintiff with discovery via electronic mail on April 5, 2023, i.e., almost a full year since the action commenced.[3] Plaintiff also received this discovery via regular mail on April 11, 2023. (Doc. 39, PageID 469.) Despite receiving the Ironton Defendants' discovery requests by April 11, 2023 at the very latest, Plaintiff did not address or otherwise communicate with the Ironton Defendants regarding the discovery requests or his concerns as to any failure to confer prior to serving discovery until May 8, 2023. This is true even though Plaintiff had dealt with the same issue concerning the Lawrence County Defendants in the previous month. On May 8, 2023, counsel for the Ironton Defendants followed up on the status of Plaintiff's discovery responses as the responsive deadline of May 5, 2023, had passed. Attached hereto as Exhibit A is the email chain regarding the discovery at issue. Contained therein, it reads:

> Mr. DeCastro,
>
> Following up on the email below, I have your responsive deadline to our discovery requests calendared on May 5, 2023. As such, can you please advise on the status of your discovery responses and when we can expect your responses?
>
> Best regards,
>
> Nate

In his motion, Plaintiff's characterization of his response to the above email is as follows:

> Plaintiff responded essentially the same as to the other Defendant's counsel, asking whether Plaintiff should disregard the requests in violation of federal rules or if there was any reason why Plaintiff shouldn't file a motion for sanctions.

---

[3] As indicated in Plaintiff's current motion, the Lawrence County Defendants also served written discovery on March 8, 2023.

3

(Doc. 39, PageID 470.) Plaintiff's actual response was:

> *My God –*
>
> *The ineptitude is staggering. You won the DunceCap of the Day award. They're not getting away with it. ESPECIALLY with lawyers like you. You are going to make sure that they won't get away with wrongfully arresting me.*
>
> *Did you mean to send me interrogatories (especially these ones)? Sending interrogatories without leave of the court before the 26(f) conference is improper, and these questions are mostly requesting things that will be in my initial disclosures or for things wholly inappropriate, especially given my claims. Should I disregard these, or is there any reason why I shouldn't file a motion for sanctions?*
>
> *I think I'm gonna file a motion for sanctions. I won't rest until my good name is cleared.*
>
> *Regards,*
> *Jose DeCastro*
>
> *Thank you,*
> *Chille DeCastro*

(Emphasis added.) (*See* Exhibit A.) Plaintiff responded to the Lawrence County Defendants discovery requests in a similar, although less pejorative, fashion stating:

> I've noted your RFPs, but did you mean to send me interrogatories (especially these ones)? Sending interrogatories without leave of the court before the 26(f) meeting is improper, and these questions are mostly requesting things that will be in my initial disclosures or for things wholly inappropriate, especially given my claims. Should I disregard these, or is there any reason why I shouldn't file a motion for sanctions? I'm considering doing exactly that. Were you unaware that you're out of bounds?

(Doc. 40-1, PageID 496.) Thus, the only communication with the Defendants were *ad hominem* attacks and threats of sanctions. (See Exhibit A; Doc. 40-1, PageID 496.) Plaintiff, when given the opportunity to advance this case through discovery and generally move this case closer to a resolution, threatened sanctions instead of conferring as suggested or responding and providing

4

the information to which he admittedly stated would be included in his initial disclosures.[4] (Exhibit A.) ("[T]hese questions are mostly requesting things that will be in my initial disclosures * * *.")

Notwithstanding Plaintiff's derogatory correspondence, and the fact that Rule 26(f)(2) indicates that the parties, including unrepresented parties, are jointly responsible for arranging the conference, the Ironton Defendants offered to confer with Plaintiff and provided him with the Honorable Judge Barrett's 26(f) discovery plan. (*See* Id.) The Ironton Defendants' response provided Plaintiff with the roadmap to resolve the dispute, i.e., confer and draft a discovery plan. (Exhibit A.) That option clearly fell on deaf ears as the present motion was filed 6 days later. As noted previously, the Court had to issue four show cause orders to Plaintiff regarding the dispositive motions filed by the Defendants. (Docs. 16, 17, 24, and 25.) Even then, Plaintiff did not respond until the 11th hour to both sets of dispositive motions and the case was even dismissed and closed. (Docs. 27 and 28.) Yet, when the Defendants make an attempt in a good faith effort to move this case forward with a pro se party, Plaintiff breaks his silence, curiously utilizes his email that he does not want to be served through, threatens sanctions, and has the herein motion prepared within 6 days. Plaintiff only utilizes the process when he believes it is advantageous to his claim.

Notwithstanding Plaintiff's course of conduct in this matter thus far, Plaintiff's Motion for Protective Order specifically argues that the information sought by the Ironton Defendants is "highly private and confidential information to embarrass and harass Plaintiff, specifically, Defendants request tax returns, social security numbers, and private medical records." (Doc. 39, PageID 471.) Additionally, Plaintiff argues that the information sought is not proportional to the needs of this case, and it would invade his privacy. (Id., PageID 471-72.) In support of Plaintiff's position, he further contends that his claims are unrelated to: (1) a reduction in income; (2) taxes

---

[4] The email correspondence attached hereto as Exhibit A is the only direct communication the Ironton Defendants received from the Plaintiff since the outset of this action.

paid; (3) mental or emotional injury; (4) physical injury; or (5) loss employment or wages. (Id., PageID 470.) Also, Plaintiff claims that the information sought would be included in his initial disclosures. (Exhibit A; Doc. 39, PageID 469.)

The Ironton Defendants discovery requests are relevant and proportional to the needs of this case; the discovery requests do not impose an undue burden on the Plaintiff *who chose to prosecute this case*. (Emphasis added.) Furthermore, Plaintiff has failed to demonstrate good cause and compliance with Federal Rules of Civil Procedure, Local Court Rules, and Standing Orders of Judge Barrett and Magistrate Bowman regarding discovery disputes. Thus, we request that this Court deny Plaintiff's Motion for Protective Order in all respects and order Plaintiff to confer in good faith regarding the discovery plan in this case.

## II. LAW & ARGUMENT

### A. Federal Rule Of Civil Procedure 26 Standards Governing Protective Orders

Federal Civil Rule 26(c) governs protective orders and grants discretion to the Court to fashion discovery in a manner "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…." Fed.R.Civ.P. 26(c). To achieve those ends, the Court may "forbid[] the disclosure or discovery … [or] forbid[] inquiry into certain matters…." *Id.* Plaintiff bears the burden of persuasion. *United States v. Univ. Hosp., Inc.*, No. 1:05-CV-445, 2006 WL 2612631, at *2 (S.D. Ohio July 28, 2006). "A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed.R.Civ.P. 26(c)(1). Furthermore, the moving party bears the burden of demonstrating

6

the alleged harm identified from Rule 26(c)(1) "with a particular demonstration of fact, as distinguished from stereotyped and conclusory statements." *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012). For the reasons set forth below, the Ironton Defendants request that this Court deny Plaintiff's Motion.

**B. Plaintiff Has Not Complied With Federal Rules Of Civil Procedure, This Court's Local Rules, And Judge Barrett's Standing Orders**

The email chain labeled as Exhibit A is the only communication from Plaintiff to the Ironton Defendants during the entire pendency of this action. Plaintiff's efforts certainly fall short of complying with Fed.R.Civ.P. 26(c)(1) which requires the movant—in this case Plaintiff—to confer or attempt to confer in good faith. Suffice to say, Plaintiff's threatened sanctions should not be classified as conferring in good faith to resolve the dispute without court action. (*Compare* Exhibit A *with* Fed.R.Civ.P. 26(c)(1).)

With regard to the local rules, S.D. Ohio Civ. R. 37.1, entitled "Consultation Among Counsel; Informal Discovery Dispute Conference," provides:

> Objections, motions, applications, and requests relating to discovery shall not be filed in this Court under any provision in Fed. R. Civ. P. 26 or 37 unless the parties have first exhausted among themselves all extrajudicial means for resolving their differences. After extrajudicial means for the resolution of differences about discovery have been exhausted, in lieu of immediately filing a motion under Fed. R. Civ. P. 26 or 37, any party may first seek an informal telephone conference with the Judge assigned to supervise discovery in the case.

And Section D of Judge Barrett's Standing Order regarding discovery motions states as follows:

> THIS COURT DOES NOT PERMIT DISCOVERY MOTIONS, i.e. motions to compel or motions for protective order regarding discovery disputes, unless and until counsel use the following procedure: Counsel must first attempt to resolve disputes by extrajudicial means (required by S.D. Ohio Civ. R. 37.1 * * *). This Court defines [extrajudicial means] as requiring counsel to try to resolve the matter both in writing and telephonically. If counsel are unable to resolve the dispute between themselves, then they must contact the Court's Courtroom Deputy, Krista Zeller * * *, and a telephone conference with all counsel and the Court will be scheduled as soon as possible.

And finally, Magistrate Judge Bowman's Standing Order is similar to S.D. Ohio Civ. R. 37.1 and Judge Barrett's Standing Order and sets forth the following in Section D:

> **2. Motions Relating to Discovery**: This Court does not allow motions relating to discovery until an informal discovery conference, as described below, is held.
>
> **3. Informal Discovery Conferences**: Pursuant to the Federal and Local Rules of Civil Procedure, the parties must exhaust all extrajudicial means of resolving discovery disputes before contacting the Court. See Fed. R. Civ. P. 37(a)(2); S.D. Ohio Civ. R. 37.1. If counsel's efforts toward an amicable solution have failed, counsel should contact the Courtroom Deputy, Kevin Moser, by telephone, in order to schedule an informal conference with the Court. Before the conference, counsel should prepare and deliver to chambers a brief, no more than 2 pages in length, setting forth arguments for or against the requested discovery. * * *

Here, Plaintiff alleges he has "attempted in good faith to confer with Defendants' counsel to resolve this dispute but has been unsuccessful." (Doc. 39, PageID 468.) Nonsense. Plaintiff readily admits in his motion that he "decided not to respond at all, because it wasn't worth typing up a reply letter." (Doc. 39, PageID 469.) Instead of typing a response letter or email, which could have led to a reasonable and more timely resolution of the discovery dispute and the case, Plaintiff waited until after the responsive deadline, failed to exhaust extrajudicial means for resolving the alleged dispute, and prematurely filed the herein motion. Plaintiff's two points of contact with the Defendants' counsel were not done in good faith. (See Exhibit A; Doc. 40-1, PageID 496.) On this basis alone, this Court should deny Plaintiff's motion.

Of further consequence, Plaintiff failed to comply with this Court's Local Rules, Judge Barrett's Standing Order, and/or Magistrate Judge Bowman's Standing Order. There is no indication that Plaintiff: (1) sought an informal telephone conference with either Judge Barrett or Magistrate Judge Bowman; (2) contacted the Court to schedule a telephone conference with all counsel and the Court; or (3) that a brief was prepared and delivered to chambers setting forth arguments against the requested discovery. Due to Plaintiff's failure to follow the procedures

8

outlined *supra* in his discovery motion, the Ironton Defendants' the Ironton Defendants request that this Court deny Plaintiff's Motion for Protective Order.

### C. The Ironton Defendants' First Set of Written Discovery Requests Directed To Plaintiff Do Not Cause Annoyance, Embarrassment, Oppressions, Or Undue Burden Or Expense.

Fed.R.Civ.P. 26(c) governs protection orders. The Rule provides that any party to an action may move for a protective order. It also provides that "[t]he motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action," and, if the motion is granted, an order may be issued "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense * * *." "This Rule confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Eagle v. Hurley Med. Ctr.*, 292 F.R.D. 466, 478 (E.D. Mich. 2013) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199, 2209 (1984)).

>Moreover, with regard to the scope of discoverability, Fed.R.Civ.P. 26(b)(1) states, in part:
>
>Parties may obtain discovery regarding any matter, not privileged, that is relevant to any party's claim or defense .... For good cause, the court may order discovery of any matter relevant to the subject matters involved in the action. Relevant information need not be admissible at the trial if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence …

Furthermore, "the scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 242 (N.D. Ohio 2017) (quoting *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)). "Generally, [Rule] 26(b) enables parties to discover any unprivileged evidence or information relevant to their claim." *Surles ex rel. Johnson v. Greyhound Lines, Inc.,* 474 F.3d 288, 305 (6th Cir.2007) (citation omitted). Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

9

discovery regarding any nonprivileged matter that is relevant to any party's or defense[.]" Fed.R.Civ.P. 26(b)(1). In addition, generally Rule 26(b)(2)(C) only allows courts to limit the frequency or extent of discovery if:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Courts, however, will not limit the liberal discovery rules unless the moving party articulates specific facts that clearly explain how the discovery sought will impose a serious and substantial injury. *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001). Thus, a mere assertion of burden is not sufficient; rather a successful motion for protective order limiting discovery must specifically delineate how compliance with the discovery request will pose substantial and undue burden on the moving party. *See Sterling Merchandising v. Nestle*, No. 06-1015(SEC), 2008 WL 1767092, at *3-4 (D.P.R. Apr. 15, 2008).

Here, Plaintiff has not specifically addressed which discovery requests of the Ironton Defendants he takes issue with. Notwithstanding, based on Plaintiff's motion, he presumably has issue with any request that would implicate his tax returns, social security number, and private medical records. First addressing requests for Plaintiff's tax returns and social security number, Plaintiff's Amended Complaint states that "[he] is a videographer, vlogger, and civil rights activists [*sic*] who has been video recording, publishing his recordings" on social media forums such as YouTube, Facebook, and Instagram since 2020. (Doc. 20, PageID 134, ¶ 9.) Furthermore, "[t]he financial benefits of [his] postings have been an essential economic support for him." (Id.) The Amended Complaint goes on to further allege that the Ironton Defendants violated his constitutional rights by impeding his right to film public officials, conduct and record interviews,

10

and other investigatory filming. Presumably, impeding his "essential economic support" would result in a loss of income.

By implication, Plaintiff's social security number and tax returns are relevant and subject to discovery. *Hart v. Alamo Rent a Car*, 959 N.E.2d 15, 2011-Ohio-4099, 195 Ohio App.3d 167, ¶ 10 (citing cases) ("Numerous trial and appellate courts have required civil litigants to disclose SSN in the confines of discovery."); *Palma v. Roman*, Civil Action No. 3:16CV-00457-CRS, at *5 (W.D. Ky. 2017) ("tax returns are not categorically privileged from disclosure in the Sixth Circuit."); *see also DeMarco ex rel. Bricklayers & Masons' Local Union No. 5 v. C & L Masonry, Inc.*, 891 F.2d 1236, 1240 (6th Cir. 1989) (citing *Credit Like Ins. Co. v. Uniworld Ins. Co.*, 94 F.R.D. 113 (S.D. Ohio 1982) (tax returns and other financial information enjoy no special privilege from disclosure even when income was not strictly at issue)); *Catrinar v. Wynnestone Cmtys. Corp.*, No. 14-11872, *4 (E.D. Mich. 2015) (citing White v. Michigan Dept. of Human Servs., 2011 WL 1882924, *1 (E.D. Mich. 2011) ("Tax returns are subject to discovery in civil litigation between private parties.")).

Turning to Plaintiff's medical records, Plaintiff vaguely asserts several times throughout his Amended Complaint that he "has suffered and continues to suffer * * * injury therefrom * * *." (Doc. 20, PageID 139-40, ¶¶ 28, 32, 35 and 38.) If Plaintiff is not asserting any claims for any physical, mental, or emotional damages, he need only respond accordingly. Furthermore, the genesis of this case is an alleged unlawful arrest. Irrespective of the legality of the arrest, it is not clear what damages Plaintiff is claiming. To the extent that Plaintiff is claiming physical, mental, or emotional damages, then Plaintiff's medical records are relevant to this action and subject to the Ironton Defendants discovery requests.

Notwithstanding the foregoing arguments, Plaintiff is entitled to object to providing his social security number, provide a partial social security number, or object predicated on providing it off the record during a deposition. Alternatively, Plaintiff may avoid responding to these discovery requests by entering into a stipulation that he is not pursuing lost income, or any damages related to physical, mental, or emotional damages. Until then or proven otherwise, Plaintiff's social security number, tax returns, and medical records are relevant. Thus, the argument that the Ironton Defendants requests are being used to embarrass and harass Plaintiff is futile and without merit.

## II.  CONCLUSION

Based upon all of the foregoing, and those arguments set forth in the Ironton Defendants' Motion in Opposition to Plaintiff's Motion for Protective Order, the Ironton Defendants respectfully request that this Court grant deny Plaintiff's Motion and order Plaintiff to confer in good faith with the Defendants.

    Respectfully submitted,

    SURDYK, DOWD & TURNER CO., L.P.A.

    */s/ Dawn M. Frick*_____
    Jeffrey C. Turner (0063154)
    Dawn M. Frick (0069068)
    Nathaniel W. Rose (0099458)
    8163 Old Yankee Street, Suite C
    Dayton, Ohio 45458
    (937) 222-2333, (937) 222-1970 (fax)
    jturner@sdtlawyers.com
    dfrick@sdtlawyers.com
    nrose@sdtlawyers.com
    *Trial Attorneys for Pam Wagner, Brad Spoljaric, Chance Blankenship, Evan McNight, Robert Fouch, and the City of Ironton, Ohio*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 25, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, a copy of which will automatically be forwarded to the parties or their counsel of record.

                                    */s/ Dawn M. Frick*_____
                                    Dawn M. Frick (0069068)